**VVIG, INC.**,

      Plaintiff,

v.

**HENRY ALVAREZ**, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff/Counter-Defendant VVIG, Inc. ("VVIG"); and Third-Party Defendants Brandtastic Parties,[1] Virtue Vape LLC ("Virtue Vape"), Flavor Suite, LLC ("Flavor Suite"), David O'Brien ("O'Brien"), John Abbey ("Abbey"), Catalina Jimenez ("Jimenez"), and Alan Smurfit's ("Smurfit['s]") (collectively with VVIG, the "Counter-Defendants[']") Motion to Dismiss Second Final Amended Counterclaim [ECF No. 79]. Defendants/Counter-Plaintiffs, Henry Alvarez and Mariano Cuesta ("Counter-Plaintiffs"), filed a Response [ECF No. 80], to which Counter-Defendants filed a Reply [ECF No. 81]. Counter-Defendants seek to dismiss each of Counter-Plaintiffs' 14 counterclaims. (*See generally* Mot.). The Court has reviewed the Second Final Amended Counterclaim ("FAC") [ECF No. 78],[2] the

---

[1] The "Brandtastic Parties" include Brandtastic Design LLC, Designated Holdings LLC, and Paul Kettlewell.

[2] This is Counter-Plaintiffs' fourth attempt to file actionable counterclaims in this action. The Court dismissed the first counterclaim, filed February 15, 2019 and improperly titled Amended Complaint [ECF No. 55], as a shotgun pleading. (*See* March 6, 2019 Order [ECF No. 62]). On March 15, 2019, Counter-Plaintiffs filed a 275-page Amended Counterclaim and Third-Party Complaint [ECF No. 66]. Counter-Defendants filed a Motion to Dismiss [ECF No. 69] the Amended Counterclaim, to which Counter-Plaintiffs responded by improperly attaching to their response a 14-count, 91-page Final Amended Counterclaim and Third-Party Complaint [ECF No. 72-1]. On July 8, 2019, the Court entered an Order [ECF No. 77] allowing Counter-Plaintiffs to refile their counterclaims as a separate docket entry, "strongly

parties' written submissions, and applicable law.

## I.     BACKGROUND

Counter-Plaintiffs and Counter-Defendants work in the e-cigarette industry.  (*See generally* FAC).   On August 18, 2018, VVIG filed a trademark infringement action against Counter-Plaintiffs, alleging federal question jurisdiction under 28 U.S.C. section 1331[3] and 28 U.S.C. sections 1338(a) and (b), and supplemental jurisdiction over state-law claims under 28 U.S.C. section 1367(a).  (*See generally* Am. Compl. ¶ 2).  VVIG alleges it developed several types of e-cigarette products which Counter-Plaintiffs marketed.  (*See id.* ¶¶ 7–10).  According to VVIG, after its business relationship with Counter-Plaintiffs soured, Counter-Plaintiffs began to manufacture VVIG's products themselves, passing the products off as their own.  (*See id.* ¶¶ 15–18).  VVIG states three claims for relief: a claim of violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (*see id.* 8–9); infringement of registered trademark and counterfeiting (*see id.* 9–10); and cancellation of state registrations (*see id.* 10).

Counter-Plaintiffs now bring 14 counterclaims against VVIG and the remaining Counter-Defendants, alleging Counter-Defendants misappropriated Counter-Plaintiffs' products.  (*See generally* FAC).  The counterclaims allege misappropriation of trade secrets (Count I); breach of manufacturing agreement (Count II); trademark and tradename infringement (Count III); Florida trademark and tradename infringement (Count IV); breach of an oral agreement (Count V); declaratory judgment for shares and shareholder rights (Count VI); interference with contractual relationship (Count VII); battery (Count VIII); fraud (Counts IX and X); violation of the Lanham

---

encourag[ing]" Counter-Plaintiffs to "streamline their counterclaims into a shorter pleading."  (*Id.* 2 (alteration added)).  Counter-Plaintiffs filed the fourth and current iteration of their counterclaims on July 10, 2019.

[3] VVIG cites to 15 U.S.C. section 1221 as the basis of federal subject matter jurisdiction.  (*See* Am. Compl. [ECF No. 6] ¶ 2).

Act (Count XI); cancellation of registration (Count XII); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count XIII); and indemnity (Count XIV). (*See id.*).

The FAC does not contain general factual allegations but includes the following definitions:

a. "Florida Misappropriated Products" is defined as the e-liquid products used for vaping with e-cigarette devices under the names Crack Pie, Dunks, Gush, Pound It, Raging Donut and Rolly.

b. "Misappropriated Products" is [sic] defined as e-liquid products used for vaping with e-cigarette devices including Dunks, Gush, Rolly, Crack Pie, Dirty Danish, Food Fighter Juice, Krispee, Monster Krisp, Pound It, Raging Donut, Puft (including Too Puft and 2 Puft); and Vape Breakfast Classics.

c. "Florida Misappropriated Product Trademark Items" is [sic] defined as the graphics, name and designs used, developed and created for the Florida Misappropriated Products.

d. "Misappropriated Product Trademark Items" is [sic] defined as the graphics, name and designs used, developed and created for the Misappropriated Products.

e. "Secret e-juice information" is all necessary know-how, standards and specifications (as well as any knowhow thereafter acquired) for the e-juice products which included [sic] "all information concerning the business affairs, products, marketing systems, technology, customers, end users, financial affairs, accounting statistical data" of Alvarez and Cuesta. The foregoing term includes:

i. any data documents, processes and methods and other information developed by Virtue Vape LLC for Alvarez and Cuesta and any other proprietary and trade secret information of Alvarez and Cuesta whether in oral, graphic written electronic or machine-readable form;

ii. the formula [sic] for each of the Misappropriated Products;

iii. the taste [sic] of each of the Misappropriated Products;

iv. the customers of the Misappropriated Products (to whom Virtue Vape LLC had shipped products for Alvarez and Cuesta);

v. software and social media advertising and ordering systems for each of the Misappropriated Products;

vi.      details and directions for the creation and reproduction of the graphic designs for the Misappropriated Products; and

vii.      marketing research for the clients and names of the Misappropriated Products.

(*Id.* ¶ 3). Because each count includes specific factual allegations, the Court addresses the necessary background facts in its analysis of each count.[4]

## II.     STANDARD OF REVIEW

"A motion to dismiss tests the sufficiency of the complaint, not the merits of a suit." *Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1345 (S.D. Fla. 2000) (internal quotation marks and citation omitted). "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Therefore a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

---

[4] As many of Counter-Plaintiffs' factual allegations are out of numerical order, the Court includes citations to both the page and paragraph number of the FAC when necessary.

### III.     ANALYSIS

Counter-Defendants argue Counter-Plaintiffs fail to state claims for relief in 11 of the 14 counterclaims.  (*See generally* Mot.).  Regarding the other three claims, Counter-Plaintiffs argue (1) Counts V and VI are duplicative of claims in a related state court action and are soon to be barred by collateral estoppel (*see id*. 12–13); and (2) Count VIII — for battery — should be severed because it is not sufficiently related to the claims in this lawsuit (*see id*. 11–12).  The Court addresses each suggested basis for dismissal of the counterclaims in turn.

### A.     Misappropriation of Trade Secrets (Count I)

To state a cause of action for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), section 688.001, Florida Statutes, Counter-Plaintiffs must allege they (1) possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret they possessed was misappropriated.  *See Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1322 (S.D. Fla. 2013) (citation omitted).  Regarding the first element, "Florida courts . . . have said that the plaintiff is required to identify with reasonable particularity the trade secrets at issue before proceeding with discovery."  *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (internal quotation marks and citations omitted).  "However, to satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret."  *Id.* (citing *Twombly* 550 U.S. at 555–56; other citation omitted).  Still, to state a claim with "sufficient particularity," the claimant must do more than simply "identify broad categories of information, such as financial and technical data."  *Id.* at 849.

Counter-Defendants assert Counter-Plaintiffs fail to state a trade secret claim because they do not identify their trade secret with "reasonable particularity." (Mot 3–5).[5] Under *DynCorp*, Counter-Plaintiffs need not do so. *See DynCorp*, 644 F. App'x at 848. Whether Counter-Plaintiffs state a cause of action for misappropriation of trade secrets depends on whether their alleged trade secret — the "secret e-juice information" — meets the relatively low "sufficient particularity" standard.

The Court concludes it does not. As noted by Counter-Defendants, the FAC's definition of "secret e-juice information" is a "grab-bag" of information (Mot. 4), so broad and conclusory as to be nonsensical. "Secret e-juice information" is defined, in part, as "*all necessary know-how, standards and specifications* . . . for the e-juice products;" including "*all* information concerning the business affairs, products, marketing systems, technology, customers, end users, financial affairs, accounting statistical data" of Counter-Plaintiffs. (FAC ¶ 3 (alteration and emphasis added)). "Secret e-juice information" is also defined in a conclusory fashion to include "any other propriety and trade secrets" of Counter-Plaintiffs. (*Id.*).

In this respect, *DynCorp* is instructive. In *DynCorp*, the complaint described the trade secrets as

> confidential and proprietary [company] financial and technical data . . . *such as* lists of the personnel employed by [the company] to provide services under [an] Incumbent Contract, the salaries and pay differentials for those personnel on the Incumbent Contract, other pricing and financial data about [the company's] performance on the Incumbent Contract, and technical data about [the company's] staffing approach and business operations pertaining to the Incumbent Contract[;]

as well as a binder with "lists of [the company's] employees staffed on [the] Incumbent Contract and their salary information, as well as numerous emails and other documents with [the company]

---

[5] Counter-Defendants rely substantially on *Levenger Company v. Feldman*, 516 F. Supp. 2d 1272 (S.D. Fla. 2007), an opinion following a bench trial rather than addressing a motion to dismiss.

logos." 664 F. App'x at 849 (emphasis and alterations added). The court found "[t]hese allegations identified the trade secrets for which [the company] was claiming protection with sufficient particularity to survive a motion to dismiss." *Id.* (alterations added). The court specifically distinguished the foregoing allegations from "broad categories of information, such as financial and technical data." *Id.*

Here, Counter-Plaintiffs' trade secrets claim relies on the sort of "broad categories of information" *DynCorp* takes pains to distinguish. *DynCorp*, 644 F. App'x at 849. General allegations of "business affairs, products, marketing systems technology, customers, end users, financial affairs, accounting statistical data," and certainly the catch-all "all necessary know how" are insufficient. (FAC ¶ 3). Simply put, "all information" (*id.*) concerning a product is not a trade secret.[6]

It does not matter that the definition of "secret e-juice information" includes some descriptors — the "formula" or "customers" of the Misappropriated Products — that are more specific. Couching specific terms within a sweeping definition is insufficient to state a trade secret claim because doing so fails to notify Counter-Defendants *which* trade secret or secrets they allegedly misappropriated. *See Taxinet, Corp. v. Leon*, No. 16-24266-CIV, 2018 WL 3405243, at *3 (S.D. Fla. July 12, 2018).

*Taxinet, Corp.* is also helpful in explaining why the trade secrets claim here is insufficient. In *Taxinet, Corp.*, the complaint defined the trade secrets as "confidential business information, processes, techniques, software applications, and business characteristics, including present,

---

[6] In response to Counter-Defendants' argument regarding the lack of specificity, Counter-Plaintiffs state, "*Claim that the pleading failed to plead that [Counter-Plaintiffs] possessed secret information*: A review of paragraph 6 reflects that this contention simply is incorrect." (Resp. 3 (alteration added; emphasis in original)). Simply referring the Court to the definition of "secret e-juice information" does not remedy the deficiencies of Counter-Plaintiffs' claim.

future, and proposed services, and business model." *Id.* The complaint also described specific characteristics of the business model, including its "Taximeter, GPS Navigation System, a Tracking System with panic button, a Payment Gateway for credit cards, and a future booking system." *Id.* The court found the trade secret claim lacking, notwithstanding the finer description of the business model, because the complaint did "not lay out . . . which of these 'trade secrets' were impermissibly used[.]" *Id.* (alterations added).

So too here. Counter-Plaintiffs fail to set forth which aspects of the "secret e-juice information" — defined as *all information* concerning the products — Counter-Defendants misappropriated. Instead, Counter-Plaintiffs allege "VVIG and Virtue shared and used the secret e-juice information" and "thus wrongfully and improperly misappropriated the secret e-juice information in order to use and continue the manufacture and distribution of the Misappropriated Products for their benefit." (FAC ¶¶ 11, 13). This allegation is insufficient because it fails to notify Counter-Defendants what aspects of the "secret e-juice information" Counter-Defendants misappropriated. Counter-Plaintiffs have failed to describe their trade secrets with sufficient particularity to state a claim.

## B. Contract-based Claims: Breach (Count II); Tortious Interference (Count VII); and Indemnity (Count XIV)

Counter-Plaintiffs bring three claims based on a Manufacturing Agreement dated December 6, 2014, between "Virtue Vape John Abbey" (the "Manufacturer") and "Henry Alvarez & Mariano Cuesta of Lee & Quids Vapor, LLC" (the "Client"). (*See* FAC, Ex. 1, Manufacturing Agreement [ECF No. 78-1]). Counter-Plaintiffs allege (1) Virtue Vape breached the Manufacturing Agreement by divulging confidential information without authorization (*see* FAC ¶¶ 17–28); (2) VVIG tortiously interfered with the Manufacturing Agreement by inducing Virtue

Vape to disclose the confidential information (*see id.* ¶¶ 73–82); and (3) Virtue Vape violated the Manufacturing Agreement's indemnity provision (*see id.* ¶¶ 134–147).

Counter-Defendants argue Counter-Plaintiffs have no standing to enforce the Manufacturing Agreement because they are not parties to it. (*See* Mot. 6). Regarding the tortious interference claim, Counter-Defendants argue Counter-Plaintiffs fail to allege (1) Virtue Vape would have performed in the absence of interference; and (2) VVIG unjustly interfered with the Manufacturing Agreement. (*See id.* 11). As to the indemnity claim, Counter-Defendants argue "nothing in the indemnity language cited in the [claim] would require Virtue Vape to identify Counter-Plaintiffs . . . ." (*Id.* 16 (alterations added)).

i.    *Parties to the Manufacturing Agreement*

The parties to the Manufacturing Agreement are identified in the preamble as "Virtue Vape John Abbey" (the "Manufacturer") and "Henry Alvarez & Mariano Cuesta of Lee & Quids Vapor, LLC" (the "Client"). (*See* Manufacturing Agreement 1). In contrast, the Manufacturing Agreement's notice provision identifies the Client as "Lee & Quids Vapor, LLC" and the Manufacturer as "Virtue Vape." (*Id.* ¶ 11). The Manufacturing Agreement is signed by both Counter-Plaintiffs under the title "Client" and by John Abbey under the title "Manufacturer." (*Id.* 7).

Counter-Defendants argue the only "Client" party to the Manufacturing Agreement is Lee & Quids Vapor, LLC — not Counter-Plaintiffs in their individual capacities. (*See* Mot 6–7; Reply 3–5). Counter-Defendants contend Counter-Plaintiffs executed the Manufacturing Agreement on behalf of Lee & Quids. (*See* Resp. 6). They state, "on its face the [Manufacturing Agreement] only applies to Lee & Quids and the brands owned by Lee & Quids, none of which are at issue here." (*Id.* 6 (alteration added)).

Counter-Plaintiffs allege they entered into the contract in their individual capacities, stating "[o]n December 16, 2014, Virtue and *Alvarez and Cuesta* entered into a Manufacturing Agreement." (FAC ¶ 18 (alteration and emphasis added)). Certainly the preamble, with its prepositional phrase, "of Lee & Quids Vapor, LLC," supports the allegation. Counter-Plaintiffs respond to Counter-Defendants' argument by emphasizing "Alvarez and Cuesta are **named, and also signed the agreement**." (Resp. 5 (emphasis in original)). In the alternative, Counter-Plaintiffs argue who the parties to the Manufacturing Agreement are is ambiguous. (*See id.*).

Accepting Counter-Plaintiffs' allegations as true, the Court finds Counter-Plaintiffs state a claim for breach of contract. Counter-Plaintiffs allege they entered into the Manufacturing Agreement in their individual capacities. (*See* FAC ¶ 18). The Manufacturing Agreement, which identifies the Client as "Henry Alvarez and Mariano Cuesto *of Lee & Quids Vapor, LLC,*" does not directly contradict Counter-Plaintiffs. (Manufacturing Agreement 1 (emphasis added)). Any ambiguity created by paragraph 11 — identifying the "Client" as Lee & Quids Vapor, LLC — must, at this stage, be construed in favor of Counter-Plaintiffs. *See, e.g.*, *Howe v. LC Philly, LLC*, No. 10-5495, 2011 WL 1465446, at *2 (E.D. Pa. Apr. 15, 2011) ("The Court must determine whether . . . it is plausible, based on the facts alleged . . . that [the defendant] is a party to the contract. Construing the Complaint [and attached email-contract] liberally, . . . the Complaint does contain sufficient facts to plausibly establish that [the defendant] is a party to the contract." (alterations added)).

ii.     *Whether Counter-Plaintiffs state contract claims*

Assuming, as it does, that Counter-Plaintiffs are parties to the Manufacturing Agreement, the Court finds Counter-Plaintiffs state claims for breach of contract (Count II) and indemnity (Count XIV). The elements of a breach-of-contract claim under Florida law are (1) the existence

of a contract, (2) a breach thereof, and (3) damages flowing from the breach. *See Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018) (citation omitted). Counter-Plaintiffs allege they entered into the Manufacturing Agreement with Virtue Vape (*see* FAC ¶ 18); the Agreement contained a confidentiality provision prohibiting Virtue Vape from disclosing "Confidential Information" (*id.*); and Virtue Vape breached the confidentiality provision by disclosing the Information (*see id.* ¶¶ 25–26).

Counter-Defendants do not contest the sufficiency of Counter-Plaintiffs' claim apart from addressing Counter-Plaintiffs' standing to bring the claim in the first instance. Therefore, Counter-Plaintiffs' breach-of-contract claim may proceed.

By extension, Counter-Plaintiffs state a breach-of-contract claim under the indemnity provision of the Manufacturing Agreement. Under that provision, "[e]ach part shall at its own expense indemnify and hold harmless, and at the other party's request defend such party . . . from and against any and all claims . . . which arise directly or indirectly out of or relate to [] any breach of this Agreement . . . ." (Manufacturing Agreement 7 (alterations added)). Counter-Defendants argue "nothing in the indemnity language . . . would require Virtue Vape to indemnify Counter-Plaintiffs for its [sic] losses with respect to trademark infringement claims." (Mot. 16 (alteration added)). This argument is of no moment because Counter-Plaintiffs have plausibly alleged Counter-Defendants breached the *confidentiality provision* of the Manufacturing Agreement. Therefore, the indemnity claim may proceed.

Likewise, Counter-Plaintiffs state a claim for tortious interference with contract in Count VII. Under Florida law, the elements of a tortious-interference-with-contract claim are: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege;

and (5) damages resulting from the breach." *United States Life Ins. Co. in the City of New York v. Logus Mfg. Corp.*, 845 F. Supp. 2d 1303, 1320 (S.D. Fla. 2012) (internal quotation marks and citation omitted). For interference to be unjustified, "the interfering defendant must be a third party, a stranger to the business relationship." *CapitalSource Bank v. MI Prop. Holdings, LLC*, No. 12-21749-CIV, 2012 WL 12886633, at *3 (S.D. Fla. Aug. 3, 2012) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)). Counter-Defendants argue the tortious interference claim fails because three of VVIG's co-owners — Jimenez, Abbey, and O'Brien — own Virtue Vape. (*See* Resp. 11).

Counter-Defendants oversimplify the law. First, while it is true there is a limited "'privilege to interfere' enjoyed by an officer or employee of a contracting party[,]" Counter-Defendants point to no case law stating this privilege extends to a separate corporate entity — here VVIG — owned in part by one of the contracting parties. In *Salit*, 742 So. 2d at 385–86, the alleged interferer was the general counsel of the corporation that was a party to the contract. Similarly, the alleged interferer in *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, 298 (Fla. 1st DCA 1989), was the vice-president of a construction company party to the contract. In *Abruzzo v. Haller*, 603 So. 2d 1338, 1339 (Fla. 4th DCA 1992), the alleged interferer was an agent of the corporate party to the contract; and in *West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. 1st DCA 1979), the court determined the alleged interferer *was a* party to the contract. None of these cases is factually analogous to the situation here.

Second, even if VVIG were entitled to interfere in the Manufacturing Agreement, "a privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract." *CapitalSource Bank*, 2012 WL 12886633, at *3 (internal quotation marks and citation omitted). Counter-Plaintiffs allege (1) the existence of the Manufacturing Agreement

between Counter-Plaintiffs and Virtue Vape (*see* FAC ¶ 74); (2) VVIG's — a non-party['s] — knowledge of the same, including its confidentiality provision (*see id.* ¶¶ 74, 82); (3) VVIG's inducement of Virtue Vape to breach the Manufacturing Agreement by disclosing confidential information to VVIG (*see id.* ¶¶ 78–79); and (4) damage to Counter-Plaintiffs, including "loss of profits from the manufacture of the Misappropriated Products" (*id.* ¶ 82). "Taking these allegations as true and viewing them in their most favorable light, [the Court finds] they establish that [Counter-Defendants] purposefully caused [Virtue Vape] to breach the [Manufacturing] Agreement, and as a result, any privilege [Counter-Defendants] may have possessed to interfere would not exist. *CapitalSource Bank*, 2012 WL 12886633, at *3 (alterations added).

## C. Trademark and Tradename Claims (Counts III, IV, XI)

The Court addresses the claims for trademark and tradename infringement (Count III), Florida trademark and tradename infringement (Count IV), and violation of the Lanham Act (Count XI),[7] together because "the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (internal quotation marks and citation omitted).

"Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Domond v. Peoplenetwork APS*, 748 F. App'x 261, 262–63 (11th Cir. 2018) (quoting *Hana Fin., Inc. v. Hana*

---

[7] Counter-Plaintiffs do not state the specific section of the Lanham Act they claim Counter-Defendants violate, merely alleging "false designation of origin and false descriptions and representations in commerce." (FAC ¶ 109). Based on this allegation, the Court construes Counter-Plaintiffs' Lanham Act claim as one for false designation of origin under 15 U.S.C. section 1125(a). The test for liability under section 1125(a) is the same as the test for Florida common law trademark infringement. *See Sesderma, S.L.*, 2018 WL 8337420, at *4 (citations omitted).

*Bank*, 574 U.S. 418 (2015)).  To state a claim for trademark infringement, a plaintiff must plead, among other elements, prior use of the mark in commerce.  *See Sesderma, S.L. v. Mediderm Labs., LLC*, No. 17-24635-CIV, 2018 WL 8337420, at *2 (S.D. Fla. Nov. 19, 2018) (citations omitted); *Armour Grp., Inc. v. Labock*, No. 11-61991, 2012 WL 12838313, at *3 (S.D. Fla. Feb. 10, 2012) (reciting elements of trademark infringement claim and noting "[a]ctual prior use in commerce is essential, and the trademark protection is limited to geographic areas where the mark is actually used in commerce and a zone of reasonable future expansion." (alteration added; citation omitted)). "A 'prior use in commerce' claim requires [allegations] of: (1) adoption and (2) 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'"  *Domond*, 748 F. App'x at 263 (alteration added; quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001)). Counter-Defendants are correct that Counter-Plaintiffs fail to allege these elements.

In support of the claims asserted in counts III and IV, Counter-Plaintiffs allege:[8]

- The Misappropriated Product Trademark Items were owned, created, developed and continuously used in commerce by Counter-Plaintiffs only;

- VVIG's non-exclusive distribution of the Misappropriated Products with the Misappropriated Product Trademark Items commenced in June 2015 and ended in June 2016;

- Subsequently, Virtue manufactured and VVIG Inc. commenced to sell solely for its own account the Misappropriated Products; and

- Virtue and VVIG adopted and used reproductions of the Misappropriated Product Trademark Items (common law Trademarks) with full knowledge of Counter-Plaintiffs' prior use, continued ownership, and continued use in commerce.

---

[8] The noted allegations are specific to Count III.  Counter-Plaintiffs recite the same allegations in Count IV but substitute the terms "Florida Misappropriated Products" and "Florida Misappropriated Trademark Items," for "Misappropriated Products" and "Misappropriated Trademark Items," respectively.  Count IV also uses the term "Florida Misappropriated Product Trademark Items," which is not defined in the FAC. (*Id.* ¶ 46).  Finally, Count IV contains factual allegations not present in Count III, but those allegations do not concern prior use.

(*See* FAC ¶¶ 32, 36, 37, 40). Counter-Plaintiffs also allege they registered Florida Trademarks for several of the Florida Misappropriated Products in July 2016. (*See id.* ¶ 52).

With respect to count XI, Counter-Plaintiffs allege:

- ▪ Counter-Plaintiffs created, developed, and distributed the Misappropriated Products either individually or through their companies, while retaining individual ownership of the Misappropriated Product Trademark Items;

- ▪ As a result of the continuous ownership, creation, development, distribution, and sales of the Misappropriated Products in commerce, Counter-Plaintiffs obtained a common law trademark on the names and designs attributable to each of the Misappropriated Products; additionally, Counter-Plaintiffs obtained and registered Florida Trademarks on the Florida Misappropriated Product Trademark Items; and

- ▪ VVIG's non-exclusive distribution of the Misappropriated Products commenced in June 2015 and ended in June 2016, with such termination known to Virtue; however, in violation of the Manufacturing Agreement, Virtue continued to manufacture the Misappropriated Products using the Misappropriated Trademark Items for VVIG.

(*See id.* 36 ¶¶ 110–11; 37 ¶ 103 (first paragraph 103)).

The foregoing allegations do not state Counter-Plaintiffs continuously used the Misappropriated Products, prior to Counter-Defendants, "in a way sufficiently public to identify . . . the marked goods" as belonging to Counter-Plaintiffs. *Domond*, 748 F. App'x at 263 (alteration added; internal quotation marks omitted). The closest Counter-Plaintiffs come to doing so is by alleging they were the "only" parties who used the "Misappropriated Product Trademark Items" (FAC ¶ 32), but this allegation is insufficient because Counter-Plaintiffs do not "identify a single instance of such use," *Sesderma, S.L*, 2018 WL 8337420, at *3.

In this respect, *Sesderma* helps illustrate why Counter-Plaintiffs' trademark and tradename claims fail. In *Sesderma*, the plaintiff argued it alleged prior use by describing it "has been continuously offering its services and selling its products;" "expended considerable money and efforts promoting its marks; and "used and continues to use in commerce in the United States the

marks . . . since at least as early as 1997." *Id.* at *3 (alteration in original). The undersigned disagreed, noting "the only facts supporting these allegations are documents demonstrating [the plaintiff] has offered and sold its products in . . . 2006." *Id.* (alteration added). Devoid of facts showing the plaintiff used the products since 1997, the plaintiff's allegations amounted to "nothing more than conclusory legal language mirroring the legal standard found in Lanham Act cases." *Id.* Here, the FAC commits the same mortal sin because it alleges no facts in support of Counter-Plaintiffs' allegation they are the "only" parties who used the products.

Counter-Plaintiffs' exhibits do not help their case. Typical evidence of prior use includes "[a] sale of marked goods . . . advertisements, publications, [or] solicitations." *Domond*, 748 F. App'x at 263 (alterations added). The exhibits that pre-date June 2016[9] are the Manufacturing Agreement; a list of VVIG account transactions [ECF No. 78-3]; a check issued by VVIG to Alvarez [ECF No. 78-4]; a list of payments made by VVIG to Cuesta [ECF No. 78-5]; and a Standard Services Agreement between VVIG and Brandtastic Design, LLC [ECF No. 78-7]. None of these exhibits shows *Counter-Plaintiffs'* prior use of the products. In fact, the exhibits undercut Counter-Plaintiffs' claim they are the "only" parties who used the Misappropriated Product Trademark items because each exhibit involves VVIG.

Because Counter-Plaintiffs do not plausibly allege prior use, their claims for trademark and tradename infringement, Florida trademark and tradename infringement, and violation of the Lanham Act fail.

### D.     Cancellation of Trademark (Count XII)

In addition to their trademark infringement claims, Counter-Plaintiffs petition to cancel the

---

[9] June 2016 is the approximate date after which Counter-Defendants allegedly misappropriated the Misappropriated Products and Florida Misappropriated Products. Out of an abundance of caution, the Court reviewed the exhibits pre-dating June 2016 in connection with its analysis of "prior use" even though Counter-Plaintiffs failed to cite to all the exhibits in each of their trademark claims.

trademarks obtained by VVIG. (*See* FAC ¶¶ 112-125). None of the parties sets forth the elements of a trademark cancellation claim or directly addresses whether Counter-Plaintiffs allege enough facts to state one. Nevertheless, the Court finds Counter-Plaintiffs have not done so.

To state a claim for cancellation of registration under 15 U.S.C. section 1064, a petitioner must allege (1) it has standing to petition for cancellation because it is likely to be damaged, and (2) there are valid grounds for discontinuing the registration. *See Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991) (footnote call number and citation omitted). The first element requires only that the petitioner "believes he is or will be damaged by the registration." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028 (C.C.P.A. 1982) (quotation marks and citation omitted). Because the Court finds Counter-Plaintiffs do not satisfy element two, it does not consider element one.

Regarding the second element, Counter-Defendants argue a trademark cancellation claim, like a trademark infringement claim, must allege prior use. (*See* Mot. 7–9). Not so. "Even where the petitioner has not demonstrated its own prior use, 'in a petition to cancel a registration less than five years old, the allegation of non-use in commerce is a proper ground for cancellation.'" *Compton v. Fifth Ave. Ass'n, Inc.*, 7 F. Supp. 2d 1328, 1333 (M.D. Fla. 1998) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:54 (4th ed. 1997); alterations omitted).

Still, Counter-Plaintiffs have not alleged non-use, prior use, or any other valid ground for cancellation. Counter-Plaintiffs' most specific allegation is, prior to registration of the trademark, VVIG "had not used the Misappropriated Product Trademark Items in commerce for itself, but rather as a non-exclusive distributor for Alvarez and Cuesta, to whom royalties were paid by VVIG." (FAC ¶ 116(b)). This is not an allegation of non-use. Rather, Counter-Plaintiffs seem

to allege Counter-Defendants distributed products already trademarked by Counter-Plaintiffs prior to the date on which Counter-Defendants registered their trademarks with the United States Patent and Trademark Office ("USPTO"). This allegation is unavailing because the Court has already found Counter-Plaintiffs fail to allege facts entitling them to trademark protection in the first instance.

The remainder of Counter-Plaintiffs' allegations concerning the grounds for cancellation are conclusory. Counter-Plaintiffs allege they "have further suffered and continue to suffer loss of profits from the diversion of the sales, market dilution, loss of market share, [and] diminution in the value of the Misappropriated Product Trademark items." (FAC ¶ 122 (alteration added)). This allegation, like those in the trademark infringement claims, contains no factual support. Counter-Plaintiffs do "not identify a single instance," *Sesderma, S.L*, 2018 WL 8337420, at *3, of value diminution or state when, how, or to what extent they lost profits. Stated otherwise, Counter-Plaintiffs' allegations amount to no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, Counter-Plaintiffs fail to state a claim for trademark cancellation.

## E. Fraud (Counts IX and X)

Count IX alleges fraud by Catalina Jimenez and VVIG. (*See* FAC ¶¶ 88–97). Count X alleges fraud by the Brandtastic Parties,[10] Virtue Vape, and VVIG. (*See id.* ¶¶ 98–108). Both claims fail because neither alleges Counter-Defendants made a statement that Counter-Plaintiffs relied upon to their detriment.

"Under Florida law, the essential elements of common law fraud are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an

---

[10] Count X appears to mistakenly allege a claim against "Brandtastic LLC," which is not a party to this case. The Court construes the claim as one against "Brandtastic Design, LLC."

intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (footnote call number, quotation marks, and citation omitted). Of course, under Federal Rule of Civil Procedure 9(b), fraud must also be alleged with particularity. *See S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1353 (S.D. Fla. 2013). Consequently, the fraud claims must state:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007); other citation omitted).

The "statement" alleged in Count IX is a USPTO trademark application prepared by Jimenez for several of the e-cigarette products. (*See* FAC ¶ 90). The "statements" made in count X are (1) Kettlewell's declaration to the European Union Intellectual Property Office and "Vapor International DOO" that he is the "owner and registrant of the EU Trademark FOOD FIGHTER JUICE" (*id.* 33 ¶ 105; Ex. 9, Declaration [ECF No. 78-9]); and (2) a Notice of Opposition filed with the European Union Intellectual Property Office stating Kettlewell is the "Owner/Co-Owner" of the FOOD FIGHTER JUICE trademark (*id.* 34 ¶ 104; Ex. 10, Notice of Opposition [ECF No. 78-10]).

Counter-Plaintiffs allege these statements were made to them "indirectly." (*Id.* ¶¶ 91, 93, 107). With respect to Count IX, Counter-Plaintiffs allege the statements were made "to provide the false representation that said [Counter-Plaintiffs] had no rights to the Misappropriated Product Trademark Items," resulting in "lost profits from the diversion of the sales, market dilution, loss

of market share, [and] diminution in the value of the Misappropriated Product Trademark Items."
(*Id.* ¶¶ 95, 97 (alterations added)).   In Count XI, Counter-Plaintiffs allege (1) the "false
representations were made indirectly . . . with the knowledge and intent that [Counter-Plaintiffs]
would be required to *rely thereon in seeking to prosecute their own claims and sales in Europe*;"
and (2) [Counter-Plaintiffs] suffered damages . . . including loss of business profits, loss of market
share, improper dilution and loss of value to their products, names and designs . . . ." (*Id.* 35, ¶¶
107–08 (emphasis and alterations added)).

These allegations fail to state Counter-Plaintiffs were induced or misled to rely on a false
statement.   Count IX alleges no reliance whatsoever; it merely states Counter-Defendants falsely
asserted ownership of an e-juice product in their USPTO application — allegations better suited
for a trademark cancellation claim.   (*See id.* ¶¶ 95, 97).   Count XI misconstrues the meaning of
reliance.   Counter-Plaintiffs allege they would have to "rely" on Counter-Defendants' false
statement in order to prosecute a claim that the statement was false.   (*See id.* 35, ¶ 107).   That
assertion is illogical — to prosecute such a claim, Counter-Plaintiffs would necessarily *reject*
Counter-Defendants' statement, not rely upon it.

Counter-Plaintiffs respond they do, in fact, plead detrimental reliance, but their response
simply refers to the paragraphs of the FAC found to be insufficient.   (*See* Resp. 9).   Counter-
Plaintiffs also argue "[d]etrimental reliance may occur . . . by indirect misrepresentation."   (*Id.*
(alterations added)).   Yet, Counter-Plaintiffs do not allege *they* (instead of the USPTO or the
European Union Intellectual Property Office) were falsely led to believe Counter-Defendants
owned the trademarks.

## F.    Florida Deceptive and Unfair Trade Practices (Count XIII)

Counter-Plaintiffs allege Counter-Defendants violated the FDUTPA, Florida Statutes

section 501.201. (*See* FAC ¶¶ 126–33). Counter-Defendants argue Counter-Plaintiffs fail to allege harm or injury to consumers. (*See* Mot. 14–15). Counter-Defendants are correct.

The FDUTPA "is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *YMD Records, LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258, 1267 (S.D. Fla. 2019) (quoting *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985). To state a FDUTPA claim, Counter-Plaintiffs must allege (1) a deceptive or unfair practice; (2) causation; and (3) actual damage. *See id.* (citation omitted). "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious *to consumers*. . . . [D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, *to the consumer's detriment*." *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (emphasis and first alteration added; citations and quotation marks omitted).

Originally, only "consumers" had standing to bring FDUTPA claims. *See e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1276 (M.D. Fla. 2016). In 2001, the Florida legislature replaced the term "consumer" in section 501.211 of the FDUTPA with the term "person." *See id.* (citing Fla. Stat. § 501.211). Following the amendment, "[t]he predominant trend is to interpret the amendment as the legislature's intent to broaden the scope of FDUPTA [sic], allowing any person or entity that has suffered a loss as a result of unfair or deceptive acts or practices to sue for damages, whether or not a 'consumer.'" *Id.* (collecting cases). Nevertheless, the party claiming a violation of the FDUTPA must still "prove [] there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015)

(alteration added; emphasis omitted); *see also CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *15 (M.D. Fla. Feb. 15, 2018) (citing *Caribbean Cruise Line* and granting motion to dismiss where plaintiff failed to allege consumer injury).

The FDUTPA claim does not allege injury or detriment to a consumer. Instead, Counter-Plaintiffs allege various "Deceptive Acts" by Virtue, VVIG, Kettlewell, and Jimenez; and then skip to a request for "a declaratory judgment that the deceptive acts and practices outlined in this count violates [sic] Florida Statutes §§ 501.201." (*Id.* ¶¶ 131–32). Counter-Plaintiffs allege *they* suffered harm as a result of the Deceptive Acts but do not identify themselves as consumers or identify any other consumers harmed by the same. (*See id.*). In short, the FDUTPA claim in Count XIII fails because Counter-Plaintiffs do not allege consumer harm.

### G. The Remaining Claims: Payroll Breach of Oral Agreement (Count V); Declaratory Judgment Action for Shares and Shareholder Rights (Count VI); and Battery (Count VIII)

The Court now turns to the claims that Counter-Defendants challenge for reasons other than the failure to state a claim for relief under Rule 12(b)(6).

*Breach of Oral Agreement.* Counter-Plaintiffs allege they entered into an oral agreement with Abbey, Jimenez, and O'Brien on May 1, 2015. (*See* FAC ¶ 61). The agreement contemplated Counter-Plaintiffs, Abbey, Jimenez, and O'Brien would form VVIG "to act as a non-exclusive distribution [sic] of e-juice liquid products which were owned by [Counter-Plaintiffs], Abbey, Jimenez, and O'Brian." (*Id.* (alteration added)). Under the agreement, Counter-Plaintiffs permitted VVIG to sell the "Misappropriated Products" in exchange for royalty and distribution payments. (*See id.*). Counter-Plaintiffs also agreed to perform unspecified services "pertaining to distribution orders" in consideration for wages. (*Id.* ¶ 62). Counter-Plaintiffs allege VVIG failed

to pay Counter-Plaintiffs royalties, distribution payments, and wages to which they were entitled. (*See id.* ¶¶ 62–64).

The elements of a breach-of-oral-contract claim are the "same elements of a written contract;" namely the formation of a contract, the assumption of mutual obligations, tender of consideration, and breach. *See Scherff v. Simba Grp., LLC*, No. 09-61835-CIV, 2010 WL 11504720, at \*6 (S.D. Fla. Mar. 2, 2010), *report and recommendation adopted sub nom. Scherff v. Simba Grp.*, No. 09-61835-CIV, 2010 WL 11504722 (S.D. Fla. Apr. 19, 2010). Construing the allegations in the light most favorable to Counter-Plaintiffs, the Court finds Counter-Plaintiffs state a claim for breach of oral contract in Count V.

Counter-Plaintiffs allege the formation of an oral agreement between themselves and several of Counter-Defendants (*see* FAC ¶ 62); the assumption of mutual obligations and consideration in the form of payment for permission to sell the Misappropriated Products and Counter-Plaintiffs' distribution services in connection with those Products (*see id.*); and breach in the form of lack of payment (*see id.* ¶ 64). Admittedly, the counterclaim contains confusing allegations as to the identity of the breaching party. It alleges individual Counter-Defendants *Abbey, Jimenez, and O'Brien* entered into the oral agreement (*see id.* ¶ 61), while Counter-Defendant *VVIG* breached the agreement (*see id.* ¶ 64). Yet, Counter-Defendants fail to address the sufficiency of Counter-Plaintiffs' claim whatsoever,[11] and the Court declines to delve into the details of the alleged contract at the motion-to-dismiss stage.

---

[11] Neither do Counter-Defendants analyze whether the claim is barred by the statute of frauds. The statute of frauds is an affirmative defense that may be raised in a motion to dismiss where "the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (citations omitted). The Court lacks the ability to "raise an affirmative defense *sua sponte.*" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) (alteration removed; quotation marks and citation omitted).

Instead of addressing the sufficiency of Counter-Plaintiffs' breach-of-oral-contract claim, Counter-Defendants argue the claim is duplicative of one currently pending in state court and "soon to be barred by the doctrine of collateral estoppel." (Mot. 13). Counter-Defendants assert "[i]n the meantime, the Court should . . . deny supplemental jurisdiction." (Mot. 13 (alterations added)).

Counter-Defendants fail to adequately explain how the claim is duplicative of the state court claim. Review of the state court Amended Complaint[12] [ECF No. 21-2] shows claims for (1) violations of section 607.1620, Florida Statutes; (2) conversion; and (3) unjust enrichment. Even if Counter-Defendants were able to show the issues in the state court Amended Complaint are identical to the ones raised here, Counter-Defendants have not demonstrated how "soon-to-be collateral estoppel" is a doctrine compelling dismissal.

Therefore, Counter-Plaintiffs' claim for breach of oral agreement may proceed.

*Declaratory Action for Shares and Shareholder Rights.* As in Count V, in Count VI Counter-Plaintiffs allege they entered into an oral agreement with Counter-Defendants Abbey, Jimenez, and O'Brien to form VVIG. (*See* FAC ¶ 66). Counter-Plaintiffs allege VVIG "was created on May 11, 2015," and the parties agreed to distribute ownership equally. (*Id.*). Counter-Plaintiffs allege Counter-Defendants are denying them rightful ownership of VVIG, and their attendant rights to inspection and dividends. (*See id.* ¶ 69). Counter-Plaintiffs seek a declaration they collectively own 40 percent of VVIG. (*See id.* ¶ 66(b)).

To state a claim for a declaratory judgment, Counter-Plaintiffs must allege a "substantial continuing controversy between two adverse parties."[13] *DWF Mgmt., LLC*, 2016 WL 6611115, at

---

[12] The state court Amended Complaint is attached to Counter-Defendants' prior Motion to Dismiss [ECF No. 21], filed November 27, 2018.

[13] The Court construes Counter-Plaintiffs' claim as seeking a judgment under the federal Declaratory

*2 (internal quotation marks and citation omitted). Counter-Plaintiffs have done so. Essentially, Counter-Plaintiffs allege there is a dispute over whether they are partial owners of VVIG. (*See* FAC ¶¶ 66–69). In response to this claim, Counter-Plaintiffs make the same arguments the Court rejected in its analysis of Count V. Therefore, the declaratory judgment claim may proceed.

*Battery.* Last, battery. In Count VIII, Counter-Plaintiffs allege Abbey assaulted Alvarez at the Virtue Vape and VVIG facility on February 9, 2016, by striking Alvarez with an office chair. (*See* FAC ¶¶ 84–85). Counter-Defendants concede that Counter-Plaintiffs state a claim in Count VIII. (*See* Mot. 11–12). But Counter-Defendants urge the Court "sever" the battery claim in the interest of judicial economy because it "has nothing to do with this case," or decline to exercise supplemental jurisdiction over the battery claim. (Mot. 12). Counter-Defendants do not provide an analysis of the Court's ancillary jurisdiction to entertain the battery claim.

Ancillary jurisdiction "is a limited exception to the rule that federal district courts have only such jurisdiction as is provided, in terms, by the Constitution or a statute." *Warren G. Kleban Eng'g Co. v. Caldwell*, 490 F.2d 800, 802 (5th Cir. 1974). "It may be employed when a federal court is presented with issues . . . so closely related to a matter over which it has jurisdiction as to be part of a single Article III 'case.'" *Id.* (alteration added). "This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain

Judgment Act, 28 U.S.C. § 2201. "Consistent with the cases and controversies requirement of Article III of the United States Constitution, the Declaratory Judgment Act specifically provides that a declaratory judgment may be issued only in the case of an actual controversy." *DWF Mgmt., LLC v. Starr Indem. & Liab. Co.*, No. 16-CV-61238-KMM, 2016 WL 6611115, at *2 (S.D. Fla. Nov. 9, 2016) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (internal quotation marks and other citations omitted)).

dormant." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1119 (11th Cir. 1983) (citation omitted).

The February 9 incident between Abbey and Alvarez does not meet the foregoing test. The episode with the chair does not rely on the same aggregate of operative facts as the claims in the main action, nor do the core of facts supporting the original claims activate legal rights in favor of Counter-Defendants for the alleged battery. Consequently, Count VIII is dismissed without prejudice for lack of jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Counter-Defendants' Motion to Dismiss Second Final Amended Counterclaim **[ECF No. 79]** is **GRANTED in part**. Counts I; III–IV; VIII; and IX–XIII of Counter-Plaintiffs' Second Final Amended Counterclaim **[ECF No. 78]** are **DISMISSED**. Counts II; V–VII; and XIV may proceed.

**DONE AND ORDERED** in Miami, Florida, this 9th day of October, 2019.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record